## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| International Fidelity Insurance Company, | : | |
| | : | |
| Plaintiff, | : | Case No. C2 07 298 |
| | : | |
| v. | : | Judge Holschuh |
| | : | |
| Vimas Painting Company, Inc., et al., | : | Magistrate Judge Abel |
| | : | |
| Defendants. | : | **JURY DEMAND ENDORSED** |

### ANSWER AND COUNTERCLAIM OF
### DEFENDANTS VIMAS PAINTING CO., INC., BESSIE XIPOLITAS,
### PANORMITIS XIPOLITAS, NICHOLAS FRANGOPOULOS, AND
### MARY FRANGOPOULOS TO THE COMPLAINT

### ANSWER

For their Answer to Plaintiff International Fidelity Insurance Company's ("IFIC") Complaint, Defendants Vimas Painting Co., Inc. ("Vimas"), Bessie Xipolitas, Panormitis Xipolitas, Nicholas Frangopoulos, and Mary Frangopoulos (collectively "Defendants") state as follows:

1.     In answering Paragraph 1 of the Complaint, Defendants deny the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the allegations.

2.     Defendants admit the allegations of Paragraph 2 of the Complaint.

3.     Defendants admit Vimas is an Ohio corporation as set out in Paragraph 3, and denies the remaining allegations of Paragraph 3 of the Complaint.

4.     Defendants deny any allegations relating to jurisdiction contained in Paragraph 4 of the Complaint purporting to allege where jurisdiction is proper, and deny any remaining allegations contained in Paragraph 4.

5.     Defendants admit the allegations of Paragraph 5 of the Complaint.

{H0914285.2 }

6.     Defendants deny any allegations relating to venue contained in Paragraph 6 of the Complaint purporting to allege where venue is proper, and deny any remaining allegations contained in Paragraph 6.

7.     In response to Paragraph 7, Defendants incorporate Paragraphs 1 through 6 of this Answer as if fully rewritten.

8.     In response to Paragraph 8, Defendants admit Vimas entered into a painting contract with ODOT to paint two bridges on Interstate Route 70 in Franklin County, Ohio, and admit this painting contract is in Vimas' possession.  Further answering, Defendants deny any remaining allegations contained in Paragraph 8.

9.     In response to Paragraph 9 of the Complaint, Defendants deny any and all allegations regarding the contents of the painting contract as the painting contract is a document that speaks for itself.

10.     In response to Paragraph 10 of the Complaint, Defendants deny any and all allegations regarding the contents of the indemnity agreement as the indemnity agreement is a document that speaks for itself.

11.     In answering Paragraph 11 of the Complaint, Defendants state that the indemnity agreement speaks for itself and deny all allegations of Paragraph 11 of the Complaint.

12.     In answering Paragraph 12 of the Complaint, Defendants state that the indemnity agreement speaks for itself and deny all allegations of Paragraph 12 of the Complaint.

13.     Defendants deny the allegations of Paragraph 13 of the Complaint.

14.     In answering Paragraph 14 of the Complaint, Defendants state that the performance bond speaks for itself and deny all allegations of Paragraph 14 of the Complaint.

15.     In answering Paragraph 15 of the Complaint, Defendants state that the maintenance bond speaks for itself and deny all allegations of Paragraph 15 of the Complaint.

16.     Defendants admit the allegations of Paragraph 16 of the Complaint that ODOT filed a lawsuit under the style set forth.  Further answering, Vimas states the Complaint speaks for itself, that it is not attached nor the reasons set forth for its omission as required by the Civil Rules, and denies the remaining allegations of Paragraph 16.  .

17.     In answering Paragraph 17 of the Complaint, Defendants deny the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the allegations.

18.     Defendants admit that IFIC demanded collateral in the amount of $500,000.00. Answering further, Defendants state that IFIC is not entitled to such collateral.  Defendants deny the remaining allegations contained in Paragraph 18 of the Complaint.

19.     In response to Paragraph 19, Defendants incorporate Paragraphs 1 through 18 of this Answer as if fully rewritten.

20.     In response to Paragraph 20 of the Complaint, Defendants deny any and all allegations regarding the contents of the indemnity agreement as the indemnity agreement is a document that speaks for itself.

21.     Defendants deny the allegations of Paragraph 21 of the Complaint.  In response to IFIC's unnumbered prayer for relief, Defendants deny that IFIC is entitled to any relief required in IFIC's prayer for relief, including its subparagraphs, contained in the prayer for relief.

22.     In response to Paragraph 22, Defendants incorporate Paragraphs 1 through 21 of this Answer as if fully rewritten.

23.     In answering Paragraph 23 of the Complaint, Defendants state that the maintenance bond and performance bond speak for themselves and deny all allegations of Paragraph 23 of the Complaint.

24.     In answering Paragraph 24 of the Complaint, Defendants state that the allegations are legal statements which require no answer on the part of Defendants, and deny the allegations.

25.     Defendants deny the allegations of Paragraph 25 of the Complaint.

26.     Defendants deny the allegations of Paragraph 26 of the Complaint. In response to IFIC's unnumbered prayer for relief, Defendants deny that IFIC is entitled to any relief required in IFIC's prayer for relief, including its subparagraphs, contained in the prayer for relief.

27.     In response to Paragraph 27 of the Complaint, Defendants incorporate Paragraphs 1 through 26 of this Answer as if fully rewritten.

28.     In response to Paragraph 28 of the Complaint, Defendants admit that IFIC demanded collateral in the amount of $500,000.00. Answering further, Defendants state that IFIC is not entitled to such collateral. Defendants deny the remaining allegations contained in Paragraph 28 of the Complaint.

29.     In answering Paragraph 29 of the Complaint, Defendants deny the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the allegations.

30.     In response to Paragraph 30 of the Complaint, Defendants deny any and all allegations regarding the contents of the indemnity agreement as the indemnity agreement is a document that speaks for itself.

31.     In response to Paragraph 31 of the Complaint, Defendants state that IFIC is not entitled to collateral. Defendants deny the remaining allegations contained in Paragraph 31 of the Complaint.

32.     Defendants deny the allegations of Paragraph 32 of the Complaint.  In response to IFIC's unnumbered prayer for relief, Defendants deny that IFIC is entitled to any relief required in IFIC's prayer for relief, including its subparagraphs, contained in the prayer for relief.

33.     In response to Paragraph 33, Defendants incorporate Paragraphs 1 through 32 of this Answer as if fully rewritten.

34.     In response to Paragraph 34 of the Complaint, Defendants deny any and all allegations regarding the contents of the indemnity agreement as the indemnity agreement is a document that speaks for itself, and deny the allegations in the paragraph.

35.     In response to Paragraph 35 of the Complaint, Defendants deny any and all allegations regarding the contents of the indemnity agreement as the indemnity agreement is a document that speaks for itself and deny the allegations in the paragraph.

36.     In response to Paragraph 36 of the Complaint, Defendants state that IFIC is not entitled to their books and records.  Defendants deny the remaining allegations contained in Paragraph 36 of the Complaint.

37.     Defendants deny the allegations of Paragraph 37 of the Complaint.  In response to IFIC's unnumbered prayer for relief, Defendants deny that IFIC is entitled to any relief required in IFIC's prayer for relief, including its subparagraphs, contained in the prayer for relief.

38.     In response to all of IFIC's unnumbered prayers for relief, Defendants deny that IFIC is entitled to any relief required in IFIC's prayer for relief, including its subparagraphs, contained in the prayer for relief.

39.     Defendants deny every allegation in IFIC's Complaint not specifically admitted herein to be true.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

40.     IFIC's Complaint is barred, in whole or in part, because it fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

41.     The injuries and damages alleged in IFIC's Complaint were the direct and proximate result of the acts and/or omissions of others or intervening agents or agencies.

### THIRD AFFIRMATIVE DEFENSE

42.     IFIC assumed the risk of the damages alleged in its Complaint.

### FOURTH AFFIRMATIVE DEFENSE

43.     IFIC's Complaint is barred in whole or in part, by its failure to mitigate its damages.

### FIFTH AFFIRMATIVE DEFENSE

44.     IFIC's own conduct is the proximate cause of its loss, damages, and injuries, if any.

### SIXTH AFFIRMATIVE DEFENSE

45.     IFIC's Complaint is barred, in whole or in part, by the doctrines of waiver, laches, unclean hands, and/or estoppel.

### SEVENTH AFFIRMATIVE DEFENSE

46.     IFIC's Complaint is barred by the relevant statute of limitations.

### EIGHTH AFFIRMATIVE DEFENSE

47.     IFIC's Complaint is barred by the contractual limitations period for filing its claims.

<u>**NINTH AFFIRMATIVE DEFENSE**</u>

48.     IFIC is precluded from relief by virtue of its actions in bad faith against Defendants.

<u>**TENTH AFFIRMATIVE DEFENSE**</u>

49.     IFIC has failed to comply with conditions precedent for payment.

<u>**ELEVENTH AFFIRMATIVE DEFENSE**</u>

50.     ODOT is statutorily barred from requiring any form of maintenance bond on this project.

<u>**TWELFTH AFFIRMATIVE DEFENSE**</u>

51.     IFIC's Complaint is barred, in whole or in part, because it willfully and/or recklessly breached its duty of good faith.

<u>**THIRTEENTH AFFIRMATIVE DEFENSE**</u>

52.     Defendants adopt and set forth by reference as if fully stated any and all affirmative defenses available pursuant to the Ohio Rules of Civil Procedure to the extent that the facts known at this time would make any said affirmative defense applicable, or if the facts were to make any said affirmative defense applicable in the future.

<u>**FOURTEENTH AFFIRMATIVE DEFENSE**</u>

53.     Defendants reserve the right to assert additional affirmative defenses as they become known after further investigation and discovery.

**WHEREFORE**, Defendants demand as follows:

      (1)     that IFIC's Complaint be dismissed with prejudice;

      (2)     that Defendants be awarded their costs; and

(3)     that the Court grant such further relief, legal or equitable, as it deems just

and proper.

                                        /s/ Roger L. Sabo
                                        Roger L. Sabo (0013125)
                                        Schottenstein, Zox & Dunn
                                        250 West Street
                                        Columbus, Ohio 43215
                                        Phone: (614) 462-2700
                                        Fax: (614) 462-5135
                                        Email:  rlsabo@szd.com
                                        Trial Attorney for Defendants

OF COUNSEL:
Jeremy M. Grayem  (0072402)
Joshua N. Stine (0076744)
Email:  jmgrayem@szd.com
           jnstine@szd.com
Schottenstein, Zox & Dunn, LPA
250 West Street
Columbus, Ohio 43215
Phone: (614) 462-2700
Fax: (614) 462-5135

## DEFENDANTS/COUNTERCLAIMANTS COUNTERCLAIM
## AGAINST INTERNATIONAL FIDELITY INSURANCE CO,

For its Counterclaim against Plaintiff International Fidelity Insurance Company's ("IFIC") Complaint, Defendant/Counterclaimants Vimas Painting Company ("Vimas"), Bessie Xipolitas, Panormitas Xipolitas, Nicholas Frangopoulos and Mary Frangopoulos, Inc. (collectively with Vimas , "Defendants") state as follows:

54.     Defendants restate the denials, admissions, statements and affirmative defenses contained in its Answer to ODOT's Complaint, Paragraphs 1-53, as if fully rewritten.

## FACTUAL BACKGROUND

55.     Vimas is a contractor that specializes in the surface preparation and painting of structural steel for structures that include existing bridges.  It has performed such work in Ohio and other states.

56.     Vimas has performed work within the State of Ohio including the Ohio Department of  Transportation.  One of the functions of the Ohio Department of Transportation is the construction, maintenance, and repair of bridges, highways and other structures that are either a part of the federal system, including the interstate, or the state highway system.

57.     All contract work performed with ODOT can only be obtained with entities that have applied for, and received, a qualification certificate from the Agency.  The qualification requirements are both financial and experience based.  As to the experience, ODOT has a series of categories for work to be performed.  In order to perform any work under ODOT, the contractor must be found qualified by work category.   A contractor may be found capable of performing work under one category but not others.  This qualification process is on an annual

basis, with the contractor having to file a request for re-qualification based upon the application form of ODOT.

58.     In addition to the ongoing application process for qualification, each contractor receives a review from the appropriate ODOT office at the conclusion of each project.  This ODOT generated form ranks the ability of the contractor on a series of rating points, including:

    a.      Organization and Management

    b.      Equipment

    c.      Work Performance

    d.      Subcontractor Management (if applicable)

59.     Since the Ohio statutes require work to be performed only with ODOT qualified contractors, the agency is not required to accept bids for construction work to all contractors but only those qualified to bid.  Section 5525.01, Ohio Revised Code.  At the time of the contract in the within case, Vimas was certified by ODOT to be qualified to perform the surface preparation and painting of structural steel.   Vimas has remained so certified by ODOT up to and including the present date.

60.     The method of performance of the work is established by ODOT contained within the Project Proposal, the Plans, and existing ODOT specifications, including supplemental specifications that may be issued from time to time and govern over standard specifications.

61.     In the late 1980's, ODOT issued what it labeled as Supplemental Specification 815 for "Field Painting of Existing Steel."  The specification established the guidelines for the procedures to apply the three coats of paint when applied to existing bridges within the state and federal system.  A portion of the requirements dealt with the surface preparation of the existing

steel.  Under the specification, the existing paint was to be blasted or otherwise removed from the existing surface, along with any rust that had developed under the existing paint.

62.     A portion of the Supplemental Specification 815 dealt with the inspection process for the bridge painting structure.  The specification required the subcontractor to appoint a Quality Control Specialist who would document various points in the overall process for inspection.  Once a point was reached within the process as set out in the Supplemental Specification, work on that segment would cease, and the Quality Control representative would meet with the ODOT on site inspector to approve the process prior to work continuing.  Should the work inspected by the ODOT representative be rejected, the work would have to be corrected prior to continuing.

63.     In 1999, the General Assembly of the State of Ohio enacted into law a provision entitled "Warranty Requirements."  Section 5525.25, Ohio Revised Code.  That statute, as initially enacted, required specified percentages of Construction contracts "be bid requiring a warranty."  The Statute set forth the length of that warranty and the type of work that would fall within the warranty, including new pavement, pavement resurfacing and rehabilitation, pavement preventative maintenance, pavement markings, raided pavement markers, and guardrail, in addition to bridge painting.

64.     On August 10, 1999, ODOT issued Supplemental Specification 885, entitled "Field Painting of Existing Steel with Warranty" with the avowed purpose to "unconditionally warrant the paint system applied to the bridge to be free of defects."  With the exception of the additional warranty imposed requirements at sections 885.01, .02, and .03, the Specification repeated verbatim the requirements contained in Supplemental Specification 815.    The 885 Specification is attached to the Counterclaim as Exhibit A.  The Specification set forth the same

quality control points as in Section 815.  The only differences between the 815 and the 885 specification are Sections 885.01, 885.02 and 885.03 which deal with warranty issues.

65.     The statutes of the State of Ohio require that state agencies require of contractors performing work with that agency two specific bond forms: a performance bond and a payment bond.   The performance bond governs the  work performed by the prime contractor and is intended for the benefit of the owner.   The payment bond provides for a guarantee as to payment for those performing work or supplying materials on the project and  intended for the benefit of the  subcontractors, material suppliers, and laborers for the specific project.  Section 5525.16 of the Ohio Revised Code. The statute sets out that the agency shall require a performance bond and a payment bond for the types of work set forth, and even provides when such bonds may be used, but are not required.  Those bonds are attached to and made a part of the Painting Contract of Vimas with ODOT.

66.     Although ODOT is limited in its powers by statute, and although the statutes governing the work of ODOT authorize only a performance bond and a payment bond, ODOT attempted to establish, within the confines of Supplemental Specification 885, surface preparation and painting a specific additional bond requirement.   ODOT, in Supplemental Specification 885 (Exhibit A), states that the Contractor shall "also furnish a 5-year warranty maintenance bond.   The Specification also sets out the amount of the maintenance bond. It is not based upon the price necessary to perform the painting work.  To the contrary, the amount of this bond is solely based upon the bid price for a specified sub item – the amount bid for Surface Preparation of Existing Steel.

67.     The maintenance or warranty bond as attempted to be set forth in Specification Section 885, and in particular .02, is not authorized under the statutory authority requiring a

warranty as mandated by Section 5525.25, Ohio Revised Code.   Further, the proposal submitted to ODOT by the bidder only provides that the "successful bidder must furnish a performance bond and a payment bond in an amount equal to one hundred per cent of the State's estimate." (Sec. 5525.16, O.R.C.).  While the attempt at such a bond recognizing the warranty is not a part of a performance or payment bond, the actions of ODOT in requiring a maintenance bond are outside of and contrary to the requirements of the statute and ODOT's own prepared proposal and as a result is void and unenforceable.   The attempt by ODOT to impose a warranty maintenance bond in a technical specification is void and invalid.

68.     In 2000, ODOT sought bids for to perform the work on surface preparation and painting the left and right spans of designated bridges on Interstate 70 in Franklin County Ohio. The portion of the bid items for surface preparation and field painting of structural steel were to be performed in compliance with Supplemental Specification 885, and to include a warranty. The proposal is attached to and made a part of the Counterclaim as Exhibit B.  Vimas bid upon, and received the award of the contract.

69.     A part of the contract for the work included the furnishing of a performance bond and a payment  bond.  Those bonds are attached to the counterclaim as Exhibits C and D, respectively.  Those bonds were executed by Vimas as principal and IFIC as surety to ODOT as the named obligee.  In addition, ODOT required Vimas to provide a maintenance bond, and the amount inserted by ODOT was for the total amount of the contract, not only the amount for surface preparation.  This bond was nonetheless executed for the full dollar amount by IFIC as surety.

70.     Vimas commenced work  and performed  surface preparation and painting of steel.  The work was inspected by ODOT under the Supplemental Specification 885 original ten-

step process. That Section sets out ten Quality Control Points, pursuant to which the surface preparation and painting was inspected. ODOT must inspect and approve the work at each step of the process, as a precondition to the contractor proceeding to the next step. The Supplemental Specification 885 defines "Quality Control Points" as:

> [p]oints in time when one phase of the work is complete and ready for inspection by both the Contractor and the Engineer prior to continuing with the next operational step. At these points: The Contractor shall afford access to inspect all affected surfaces.

(Section 885.05(B) of Exhibit A to Counterclaim).

71.     The contractor is to provide access to the bridge for ODOT by the setting of scaffolds as well as other protective equipment (Section 885.13 of Exhibit A to Counterclaim). Once ODOT has inspected the defined operational step, then the contractor may continue unless defects are found. At that point:

> If inspection indicates a deficiency, that phase of the work shall be corrected in accordance with these specifications prior to beginning the next phase of work.

(Section 885.05(B) of Exhibit A to Counterclaim).

72.     The painting contractor is further advised in the Specification that discovery of defective work or material after a Quality Control point "is past or failure of the final product *before final acceptance* shall not in any way prevent rejection or obligate the State of Ohio to final acceptance" (Section 885.05(B) of Exhibit A to Counterclaim). Final acceptance has occurred on this project. ODOT has paid Vimas for its work performed.

73.     Under the Supplemental Specification process, the bridge would be subject to a warranty "review" in 2005. Events transpired prior to 2005 that changed the entire nature of the warranty review. Those events began with the indictment, in 2003, of two bridge painting contractors and their principals for the payment of monies to the ODOT inspectors in return for

their approval of the work being performed under the ten step inspection program under the Supplemental Specification process.  The ODOT inspectors were similarly indicted.

74.    As a result of these limited events, ODOT chose to distrust the entire group of contractors it had chosen to qualify for painting of contractors for the period 1997 through 2003.  In 2004, ODOT implemented its Bridge Action Plan.  That plan included increased training for the ODOT inspector and bridge painting inspector/quality control representative for the contractor, revisions to the prior paint specification to include additional obligations including the quality control representatives final inspection, and strengthening obligations and requirements to be pre-qualified as a painting subcontractor.    For the first time, this 2004 specification authorized destructive testing by ODOT as a part of its field inspection that would take place prior to final acceptance.  This destructive testing required the removal of the newly applied paint down to surface metal.   A copy of the front page of the revised specification, Plan Note 891, specification 514, that became a part of the bridge painting process in 2004, is attached as Exhibit E.  It states, on its face, that significant changes were made in the process.

75.    ODOT then began its own unannounced inspection of bridges that had been previously inspected and paid for in the period of 1997-2003.  It determined over 200 bridges were not properly repaired or painted, notwithstanding ODOT previous approval and acceptance under the ODOT ten point approval process.  As part of the Bridge Action Plan, ODOT engaged the services of an outside individual, Gary Tinklenberg of Corrosion Control Consultants, to inspect bridges or train others to inspect bridges to be qualified as "warranty inspection engineers."   This consultant then established a protocol for use by representatives of ODOT.  This process included stripping the existing paint.  As a result of the revised inspection process, the new teams of ODOT inspectors issued reports.   On the basis of the inspections, Gary

Tinklenberg would issue a report finding, in virtually every ODOT bridge painting project, defects such that reblasting and repainting were required. Reports showing defects were issued in the following projects for which the warranty was in effect including the project in this proceeding.

| | | | |
|---|---|---|---|
| 1999-0655 | 2000-0302 | 2000-0524 | 2001-0088 |
| 1999-0656 | 2000-0306 | 2000-0526 | 2001-0107 |
| 1999-0763 | 2000-0323 | 2000-0533 | 2001-0114 |
| 2000-0004 | 2000-0378 | 2000-0539 | 2001-0118 |
| 2000-0039 | 2000-0406 | 2000-0559 | 2001-0137 |
| 2000-0067 | 2000-0425 | 2000-3000 | 2001-0155 |
| 2000-0111 | 2000-0444 | 2000-3014 | 2001-3000 |
| 2000-0165 | 2000-0466 | 2001-0008 | 2001-3002 |
| 2000-0184 | 2000-0471 | 2001-0022 | 2001-3005 |
| 2000-0274 | 2000-0511 | 2001-0026 | 2001-3009 |
| | | | 2001-3010 |

76.     The report stemming from the 2005-2009 re-inspection with its new procedures here, as in every other project, ignores completely the acceptance by ODOT at each stage of the bridge preparation process, including surface preparation, and attempts to establish a higher standard of care than has been accepted in previous years by ODOT.

77.     ODOT forwarded correspondence to Vimas and the surety following the revised inspection process. ODOT demanded that the alleged defects be corrected. Following that, IFIC requested documentation as to the events. ODOT nonetheless chose to file the lawsuit against Vimas and IFIC as the surety alleging breach of contract and for payment to be made to ODOT under the maintenance bond. The Specification of ODOT would require a bond only in the amount of the surface preparation, approximately $244,000.00. Instead ODOT asked for payment on the entire contract amount, $489,000.00.

78. The lawsuit filed against Vimas was but one of forty such lawsuits filed by ODOT throughout the state for alleged breaches of contract and for recovery under the maintenance bond.

79. Vimas notified IFIC of the defects in the maintenance bond and the lack of any statutory authority to issue such a bond. It also stated it would, pursuant to the contract of indemnity, defend IFIC pursuant to that commitment. Vimas filed an answer and a counterclaim that, *inter alia*, asked for a declaration that the maintenance bond was void and invalid.

80. IFIC declined to allow Vimas to represent it. It instead chose to file its own answer unless Vimas would agree it was liable in advance. IFIC demanded that Vimas collateralize its judgment in the amount of five hundred thousand dollars to IFIC. That was the demand even though the bond amount should have been one half that amount.

81. IFIC separately chose to answer the complaint with separate counsel. Its theory of relief, however, was to request a reformation of the contract to lower the amount of the counterclaim, not to declare it invalid.

82. The response of Vimas to ODOT's claim that it was not entitled to relief based upon the maintenance bond had an obvious impact upon ODOT. It forwarded correspondence to all contractors and their sureties making a claim upon the performance bond in order to correct its errors. It moved to amend its complaints to allege an additional violation, that of the performance bond in all of its lawsuits.

83. Undaunted by the ODOT amendment and the lack of authority to claim under a payment bond, IFIC proceeded to file a response to the amended complaint by seeking reformation of the amount of the maintenance bond, notwithstanding its total invalidity.

84.     Vimas has also had a claim filed by ODOT, and a subsequent lawsuit in what is now case 2006 08062PR, Ohio Court of Claims.   There is a separate surety for Vimas in that case,  which has agreed to allow Vimas, and this law firm, to represent it.

85.     Because of the similar facts in Case No. 2006 08062PR, Ohio Court of Claims, Vimas has moved to consolidate the within action with that case.  This would have an economic advantage to Vimas.  IFIC, however, has opposed the motion.

## COUNT ONE

86.     The allegations of the preceding Paragraphs are incorporated as if rewritten.

87.     A surety is not an insurer.  It performs a role in a credit relationship.  The obligations of IFIC as surety, are secondary *inter se* as between Vimas as principal and IFIC as surety.  IFIC serves only as a credit basis to the obligee on the bond and is entitled to a return of any properly made payments and properly incurred expenses incurred either by Vimas or by the indemnitors on the bond.

88.     Because of the relationship between principal and surety and indemnification requirements, IFIC has fiduciary obligations including a duty of good faith on the part of IFIC toward each of the Defendants.

89.     The interests in the ongoing litigation that serves as the basis for IFIC's demand in this Case should be identical to that of Vimas.  If Vimas is not obligated to ODOT either by contract or bond, then *a fortiori* IFIC has no obligation. It is because of this identity of interests that the same counsel typically represent the principal and the surety in litigation, as Vimas is doing for its surety in case 2006 08062 PR, Ohio Court of Claims.

90.     IFIC has, throughout the litigation, engaged in bad faith conduct toward the principal, Vimas, and the Defendants, by conduct that includes:

a.      Demanding an amount for collateral that is alleged to be based upon a demand on the maintenance bond for twice the amount authorized by the ODOT specification.

b.      Failing to allege or demand in the lawsuit by ODOT that the maintenance bond is not authorized to be even issued by ODOT.

c.      Failing to allege in the lawsuit by ODOT the maintenance bond is beyond the statutory authority of ODOT.

d.      Failing to allege that the reason for the maintenance bond attempt was due to the lack of any claim rights under a performance bond for defects following acceptance.

e.      Failing to challenge the action on the performance bond as invalid, since doing so would eliminate its right to recover expenses it incurred from Defendant.

f.      Objecting to a consolidation of cases as contrary to own its self interest, as opposed to the interest of its principal, Vimas.

g.      Attempting to mask its lack of good faith and its own interests under a purported claim right to collateralization at a time when the claim under the maintenance bond was half the amount claimed, even if the bond were valid.

h.      Failing to perform its duties as a surety by not even knowing the amount of a maintenance bond, even assuming its validity.

91. The actions of IFIC are only performed for its own self interest and contrary to the rights afforded Defendants and the obligations both under the agreement and implied. If there is no valid claim against a bond, IFIC has no basis to claim expenses under a claim by ODOT that is non existent. It serves its own interest to have a claim allowed by ODOT, which permits it to claim for expenses and recumbent from Vimas and the other Defendants.

92. Defendants are entitled to damages from IFIC for its contract breach and bad faith conduct, in an amount in excess of $25,000.

## COUNT TWO

92. The allegations of the preceding Paragraphs are incorporated as if rewritten.

93. The actions of IFIC are in bad faith and willful, wanton and malicious.

94. Defendants are entitled to punitive damages for the wrongful conduct of IFIC.

## COUNT THREE

95. The allegations of the preceding Paragraphs are incorporated as if rewritten.

96. The conduct of IFIC as set out in the factual statement is in breach of its contract with Defendants for indemnity.

97. As a result of the breach, IFIC is precluded from asserting any claim rights against Defendant.

98. Defendants are entitled to a declaration that IFIC is precluded from seeking recovery under the indemnity agreement due to its conduct.

## COUNT FOUR

99. The allegations of the preceding Paragraphs are incorporated as if written.

100.    Vimas has put IFIC on notice that to comply with the request for collateralization of $500,000 would impact is obligations to obtain future work, due to bond requirements and lack of capital to obtain such bonds.

101.    Vimas is entitled to its damages from IFIC for such impact upon its bonding capacity and ability to remain in business.

**WHEREFORE**, Defendant/Counterclaimant seeks:

(1)    a declaration that IFIC is barred from asserting any rights under its contract with Defendants.

(2)    a declaration that IFIC's conduct is a material breach of the subject contract and precludes IFIC from any recovery under the indemnity contract;

(4)    recovery of damages to Defendants resulting from IFIC's bad faith conduct;

(5)    punitive damages;

(6)    a declaration that IFIC is not permitted to recover any expenses incurred;

(7)    recovery of Defendant's reasonable attorney's fees and costs, with interest; in this and the underlying litigation, and

(8)    that the Court grants such further relief, legal or equitable, as it deems just and proper.

/s/ Roger L. Sabo
Roger L. Sabo (0013125)
Schottenstein, Zox & Dunn, LPA
250 West Street
Columbus, Ohio 43215
Phone: (614) 462-2700
Fax: (614) 462-5135
Email:  rlsabo@szd.com
Trial Attorney for Defendants

OF COUNSEL:
Jeremy M. Grayem (0072402)
Joshua N. Stine (0076744)
Email:  jmgrayem@szd.com
        jnstine@szd.com
Schottenstein, Zox & Dunn, LPA
250 West Street
Columbus, Ohio 43215
Phone: (614) 462-2700
Fax: (614) 462-5135

## **JURY DEMAND**

Defendant/Counterclaimant defendants request a trial by jury of all claims asserted in its

Counterclaim.

/s/ Roger L. Sabo_____
Roger L. Sabo

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing Answer and Counterclaim was served this 8th day of May 2007, via the Court's electronic filing notification, upon:

> Lee M. Brewer, Esq.
> Alber Crofton, PSC
> 501 West Schrock Road, Suite 104
> Westerville, Ohio 43081

/s/ Roger L. Sabo
Roger L. Sabo