**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **INTERNATIONAL FIDELITY INS. CO.,** : | |
| : | **Case No. 2:07-cv-298** |
| **Plaintiff,** : | |
| : | **Judge Holschuh** |
| v. : | |
| : | **Magistrate Judge Abel** |
| **VIMAS PAINTING CO., INC. et al.,** : | |
| **Defendants.** : | |
| : | |

**MEMORANDUM OPINION & ORDER**

Plaintiff International Fidelity Insurance Company ("IFIC"), a commercial surety, filed suit against Vimas Painting Company, Inc. ("Vimas") and other parties to an Indemnity Agreement, seeking monetary damages and specific performance of that agreement. Defendants filed a four-count counterclaim alleging that IFIC acted in bad faith. This Court's jurisdiction is based on diversity of citizenship. See 28 U.S.C. § 1332. This matter is currently before the Court on Plaintiff's motion to dismiss the counterclaim (Record at 9), and on Defendants' motion to strike Plaintiff's "Notice of Supplemental Authority." (Record at 36). For the reasons stated below, Plaintiff's motion is granted and Defendants' motion is denied.

**I.  Background and Procedural History**

In 2000, Vimas submitted a bid to the Ohio Department of Transportation ("ODOT") for surface preparation and painting of two highway bridges on Interstate 70 in Franklin County, Ohio. In February of 2001, ODOT awarded Vimas the $1,825,983 contract. ODOT required

Vimas to obtain performance and payment bonds in the amount of $2.575 million each.[1] ODOT also required Vimas to obtain a $1.6 million 5-year warranty maintenance bond to guarantee against defects in materials or workmanship.  IFIC, as surety, issued all three bonds, with Vimas as the principal and ODOT as the obligee.

In consideration for the bonds, Vimas, along with Bessie and Panormitas Xipolitas and Nicholas and Mary Frangopoulos (collectively "the Indemnitors" or "Defendants"), entered into an Indemnity Agreement with IFIC.  The Indemnitors agreed to:

> exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement.

Indem. Agr. ¶ 2; Ex. B to Compl.  The Indemnitors also agreed to make a payment, equal to the reserve set by IFIC, as soon as liability existed or was asserted against IFIC.  Id.

The Indemnity Agreement further provided:

> The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Contractor and the Indemnitors shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind

---

[1] A contract performance bond guarantees that the contractor "will perform the work upon the terms proposed, within the time prescribed, and in accordance with the plans and specifications."  Ohio Revised Code § 5525.16(A)(1).  A payment bond guarantees payment to subcontractors for work performed and materials furnished in connection with the job.  Ohio Revised Code § 5525.16(A)(2).

>    and amount, to be used in paying any judgment or judgments
>    rendered or that may be rendered, with interest, costs, expenses
>    and attorneys' fees, including those of the Surety.

Id. at ¶ 13.  Pursuant to the Agreement, IFIC was entitled to charge the Indemnitors "for any and all disbursements made by it in good faith."  Id. at ¶2.

Vimas commenced the bridge painting project, and ODOT inspectors approved the quality of the work at ten different steps along the way.  Upon successful completion of the project, ODOT paid Vimas in full.  Subsequently, during a warranty inspection, ODOT discovered numerous alleged defects in the paint job and demanded that Vimas and IFIC honor their obligations under the maintenance bond.  They failed to do so.  Thereafter, on May 18, 2006, ODOT filed suit in the Court of Claims of Ohio against Vimas and IFIC seeking recovery under the maintenance bond.  Gordon Proctor, Director of the Ohio Dep't of Transp. v. Vimas Painting Co., Inc. and International Fidelity Ins. Co., Case No. 06-CVH-5-6607 ("the underlying suit").[2]

IFIC established a $500,000 reserve and, on August 2, 2006, pursuant to the terms of the Indemnity Agreement, demanded that Vimas provide an equal sum as collateral.  Vimas refused to do so.  Vimas filed a counterclaim against ODOT, taking the position that ODOT had no statutory authority to require maintenance bonds of its contractors, and that the maintenance

---

[2] According to Vimas, ODOT has filed similar suits against approximately 40 painting contractors.  The suits allegedly stem from a 2003 incident in which two bridge painting contractors were indicted for bribing ODOT inspectors to approve substandard work.  The ODOT inspectors were also indicted.  Following that incident, ODOT allegedly retrained its inspectors, significantly raised its standards, re-inspected all projects that had been completed between 1997 and 2003, and is now seeking to recover damages from the contractors for defective workmanship.

bond was therefore void and invalid.[3] Vimas also complained that even though the bid specifications called for a maintenance bond equal only to the bid price for surface preparation -- approximately $850,000 -- ODOT demanded, and IFIC executed, a maintenance bond for $1.6 million, nearly twice that amount. Although Vimas offered to defend IFIC, IFIC declined Vimas's offer and filed its own answer to the complaint, using separate counsel. IFIC did not argue that ODOT lacked authority to require the maintenance bond. Instead, it simply sought to reform the contract to decrease the amount of the maintenance bond.

In April of 2007, IFIC filed this suit against Vimas, and against Bessie and Panormitas Xipolitas and Nicholas and Mary Frangopoulos, alleging claims of breach of contract, and seeking specific performance of those portions of the Indemnity Agreement which require Defendants to post the requested collateral and allow IFIC access to Vimas's books and records. IFIC also states a claim for common law indemnification.

Defendants then filed a four-count counterclaim against IFIC. Count 1 seeks compensatory damages based on allegations that IFIC breached its duty of good faith by, among other things, failing to accept Vimas's offer of representation, failing to argue that ODOT had no statutory authority to require the maintenance bond, failing to challenge the action on the performance bond as invalid, demanding that Defendants post excessive collateral, and opposing a motion to consolidate the underlying suit with a separate case filed by ODOT against Vimas and another surety. Count 2 seeks punitive damages based on allegations that IFIC acted in bad

---

[3] ODOT later amended the complaints in all of its cases seeking, in the alternative, to recover under the performance bonds. Vimas, however, contends that since ODOT already issued its final acceptance of the project, recovery is no longer available under the performance bond.

faith and in a willful, wanton and malicious manner. Count 3 seeks a declaration that because IFIC materially breached the terms of the Indemnity Agreement, IFIC is precluded from asserting any contractual rights or recovering under that agreement. Count 4 seeks damages based on the allegation that IFIC's demand for collateral negatively affects Vimas's bonding capacity and its ability to obtain future work.

On September 7, 2007, IFIC moved to dismiss the counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. After that motion was fully briefed, IFIC filed a Notice of Supplemental Authority, directing the Court's attention to a decision issued on November 30, 2007 by the Ohio Court of Claims in Proctor v. Nasco Construction, Inc., Case Number 2006-08038-PR. Defendants have moved to strike that document. Defendants later filed a Notice of Supplemental Authority, directing the Court's attention to an opinion issued by Magistrate Judge King in Kokosing Construction Co., Inc. v. RLI Insurance Co., No. 2:07-cv-265, 2008 WL 399633 (S.D. Ohio Feb. 12, 2008). IFIC has objected to the Court's consideration of that decision.

**II.      Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted. Because a motion under Rule 12(b)(6) is directed solely to the complaint itself, Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983), the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately prevail. Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 184 (2005) (citing Scheuer v. Rhodes, 4l6 U.S. 232, 236 (1974)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a

5

defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993).

The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. See Conley v. Gibson, 355 U.S. 41, 47 (1957); Lewis v. ACB Business Serv., Inc., 135 F.3d 389, 405 (6th Cir. 1998). A complaint need not set down in detail all the particularities of a plaintiff's claim. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)(emphasis in original). Bare assertions of legal conclusions are insufficient. See id.; Allard v. Weitzman (In re DeLorean Motor Co.), 991 F.2d 1236, 1240 (6th Cir. 1993). Likewise, "a formulaic recitation of the elements of a cause of action" is not enough. Bell Atlantic Corp. v. Twombly, -- U.S. --, 127 S.Ct. 1955, 1965 (2007).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. See Scheuer, 4l6 U.S. at 236; Arrow v. Federal Reserve Bank of St. Louis, 358 F.3d 392, 393 (6th Cir. 2004); Mayer, 988 F.2d at 638. The Court will indulge all reasonable inferences that might be drawn from the pleading. See Saglioccolo v. Eagle Ins. Co., 112 F.3d 226, 228 (6th Cir. 1997). However, it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. See Gregory v. Shelby County, 220 F.3d 433, 446 (6th Cir. 2000); Lewis, 135 F.3d at 405-06.

The Court will grant a motion for dismissal under Rule 12(b)(6) if there is an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. Little v. UNUM Provident Corp., 196 F. Supp. 2d 659, 662 (S.D. Ohio 2002) (citing Rauch v. Day & Night Mfg. Corp., 576 F.2d 697 (6th Cir. 1978)).

**III.    Analysis**

As noted above, Defendants have asserted a four-count counterclaim against IFIC. Counts I, II, and IV seek compensatory and punitive damages based on IFIC's alleged bad faith conduct. Defendants allege that IFIC has essentially blackmailed them by conditioning the tender of its defense on Defendants' payment of the $500,000 in collateral. According to Defendants, such a *quid pro quo* is not permitted by the terms of the Indemnity Agreement. Defendants further allege that IFIC acted in bad faith by: executing a maintenance bond in an amount in excess of what ODOT required; refusing to raise various defenses that Defendants deem appropriate; and by objecting to the consolidation, in the Ohio Court of Claims, of the underlying suit with another suit filed against Vimas. Defendants maintain that IFIC's interests should be squarely aligned with theirs. Count III, which is based on the same factual allegations that gave rise to the claims of bad faith, seeks a declaration that because IFIC materially breached the terms of the Indemnity Agreement, IFIC is precluded from asserting any contractual rights.

In its motion to dismiss the counterclaim, IFIC argues that dismissal is warranted because Ohio does not recognize a claim of bad faith filed by a principal against its surety. In the alternative, it argues that even if Ohio did recognize such a claim, the allegations asserted by

Defendants are not legally sufficient to support a claim of bad faith.  In fact, the Indemnity Agreement expressly requires the Indemnitors to post collateral equal to the amount set aside by IFIC.  Moreover, it does not require IFIC to tender its defense in the underlying suit to the Indemnitors.  IFIC argues that after Defendants breached their contractual duty to post the collateral, the resulting conflict of interest justified maintaining a separate defense.

After carefully reviewing the briefs submitted by the parties and conducting additional research, the Court agrees that a tort claim of bad faith filed by a principal against its surety is not cognizable.  Because Defendants have failed to state a claim upon which relief can be granted, the Court grants IFIC's motion to dismiss the counterclaim.

As a general rule, under Ohio law, it is "no tort to breach a contract, no matter how wilful or malicious the breach."  Ketcham v. Miller, 104 Ohio St. 372, 136 N.E. 145 (Ohio 1922).  "[O]nly in those contract situations where a special or fiduciary relationship exists between the parties and imposes a duty of good faith will the breach of the same result in a tortious cause of action."  Empire-Detroit Steel Div. Cyclops Corp. v. Pennsylvania Electric Coil, Inc., No. CA-2903, 1992 Ohio App. LEXIS 3559, at *9 (5th Dist. Ct. App. June 29, 1992).  Ohio courts have held that such a fiduciary relationship exists in the context of insurance contracts, and that an insurer therefore has a implied duty to act in good faith in handling the claims of its insured.  Hoskins v. Aetna Life Ins. Co., 6 Ohio St. 3d 272, 452 N.E.2d 1315 (Ohio 1983).  Because of this fiduciary relationship, an insured may pursue a bad faith tort claim against the insurer.  At issue in this case is whether the same kind of fiduciary relationship exists between a principal and its surety.

As the Supreme Court of Ohio acknowledged in Suver v. Personal Insurance Company, 11 Ohio St. 3d 6, 462 N.E.2d 415 (Ohio 1984), there are significant differences between insurance policies and surety agreements.  An insurance policy is a contract between two parties, written for the benefit and protection of the insured.  If the insured suffers a loss, the insurer is obligated to pay and is not entitled to seek reimbursement from the insured.  In contrast, a surety agreement is a three-way contract written for the benefit and protection of the obligee.  The surety essentially extends standby credit by agreeing to answer for the principal's debt or default.  If the surety pays a claim, it has the right to seek indemnification from the principal who remains primarily liable. A surety must often balance competing claims of the principal and obligee.

At issue in Suver was whether the issuer of a financial responsibility bond has a duty to act in good faith in the handling and payment of claims made by a third party injured in a car accident caused by the principal.[4]  The court noted that, in this context, the relationship between the injured third party and a surety was similar to the relationship between a policyholder and an insurance company.  The law clearly permits a policyholder to bring a bad faith tort claim against its insurer.  The court therefore concluded that an injured third party should likewise be permitted to pursue a bad faith tort claim against the issuer of a financial responsibility bond.  It noted that the same policy considerations are at issue in both settings – a great disparity of financial resources, public interest, and the need to discourage routine denial of payment of claims for as long as possible.  Id. at 8, 462 N.E.2d at 417.

---

[4] A driver who cannot obtain traditional automobile insurance, presumably because he or she is a poor risk, may satisfy Ohio's "financial responsibility" requirements by purchasing a bond from a surety company.  See Ohio Revised Code §§ 4509.45(B), 4509.59.  A financial responsibility bond is, therefore, a substitute for an insurance policy.

The holding in <u>Suver</u> is inapposite for two reasons.  First, as one scholar has noted, "[e]ven if one accepts the logic of the <u>Suver</u> decision in the area of the financial responsibility bond, its rationale is not so readily transferable to the construction surety" because the same policy considerations are not at stake.  John J. Aromondo, <u>The Surety's Liability of "Bad Faith": Claims for Extra-Contractual Damages by an Obligee under the Payment Bond</u>, 47 Me. L. Rev. 389, 400-02 (1995).  Second, and more importantly, the court in <u>Suver</u> did not hold that a *principal* could pursue a bad faith tort claim against a surety.  The bad faith claim in that case was brought by the injured third party for whose benefit the bond was executed.

Indeed, courts that have addressed this issue have uniformly held that while a surety owes a duty of good faith to the obligee, a surety owes no such duty to the principal.  As the court explained in <u>Shannon R. Ginn Construction Co. v. Reliance Insurance Co.</u>, 51 F. Supp. 2d 1347 (S.D. Fla. 1999), the relationship between a surety and the obligee is analogous to the relationship between the insured and insurer.  The obligee requests a bond to protect itself from loss in case the principal defaults.  The bond is issued for the benefit of the obligee, not the principal.  The principal, who remains primarily liable, does not look to the surety for protection as the insured does to the insurer.  Therefore, while an obligee may bring a bad faith claim against a surety, a principal may not.  <u>Id.</u> at 1352-53.  See also <u>Associated Indem. Corp. v. CAT Contracting, Inc.</u>, 964 S.W.2d 276, 278 (Tex. 1998) ("a surety does not owe a common law duty of good faith to its principal"); <u>Insurance Co. of the West v. Gibson Tile Co.</u>, 134 P.2d 698 (Nev. 2006) (since no fiduciary relationship exists between a performance bond surety and its principal, the principal cannot sue the surety in tort for bad faith or breach of the covenant of good faith and fair dealing); <u>Masterclean, Inc. v. Star Ins. Co.</u>, 556 S.E.2d 371, 376-77 (S.C.

2001) (because the surety bond is designed to protect the obligee and not the principal, a principal cannot maintain a bad faith claim against the surety); Cates Constr., Inc. v. Talbot Partners, 980 P.2d 407 (Cal. 1999) (no tort recovery is available for breach of implied covenant of good faith and fair dealing in the context of a construction performance bond).

Defendants also argue that even if there is no *implied* duty of good faith, the Indemnity Agreement itself expressly imposes a duty of good faith.  It states that, "[t]he Surety shall be entitled to charge for any and all disbursements made by it in *good faith* in or about the matters herein contemplated by this Agreement."  Indem. Agr. ¶ 2.  Contrary to Defendants' interpretation, this provision does not establish the kind of fiduciary relationship that would allow the Indemnitors to sue IFIC in tort for a claim of bad faith.  Instead, it simply establishes a *defense* that the Indemnitors may assert in response to a future claim for indemnification by IFIC.[5]

As the court held in Masterclean, a principal may assert a surety's bad faith as a *defense* to a claim for indemnification, but such bad faith does not give rise to an *affirmative claim* for damages.  See 556 S.E.2d at 376-77.  Other scholars have stated, "[e]ven when the principal or indemnitors alleged violations of the implied covenant of good faith and fair dealing, the claim uniformly arose as a defense to the surety's claim for indemnity, and not as an affirmative claim for damages.  To the knowledge of the writers, no court has held a surety liable to the principal or the indemnitor on the basis of the special relationship that has been found in insurance cases." Bernard L. Balkin and Keith Witten, Current Developments in Bad Faith Litigation Involving

---

[5] It does not appear that IFIC has made any disbursements at this point.

the Performance and Payment Bond Surety, 28 Tort & Ins. L.J. 611, 623-24 (1993).[6]

In support of its memorandum in opposition to IFIC's motion to dismiss the counterclaim, Defendants point to Magistrate Judge King's recent decision in Kokosing Construction Co., Inc. v. RLI Insurance Co., 2:07-cv-265, 2008 WL 399633 (S.D. Ohio Feb. 12, 2008), granting the plaintiff construction company's motion for leave to amend its complaint to assert a bad faith claim against its surety. That opinion, however, is inapposite because of the procedural posture of that case. Under Federal Rule of Civil Procedure 15(a), the court should freely grant leave to amend pleadings "when justice so requires." Magistrate Judge King specifically noted that there is no clear authoritative case law in Ohio either *recognizing* or *prohibiting* a tort claim of bad faith brought by a principal against its surety on a performance bond. She therefore concluded that it would be best to allow plaintiff to amend the complaint to assert the bad faith claim. The defendant could then file a dispositive motion challenging the viability of the claim. After the issue had been fully briefed, the district judge would be in a better position to decide whether the claim was cognizable under Ohio law.

---

[6] The cases cited by Defendants in their memorandum in opposition do not stand for the proposition that a principal may sue a surety in tort based on a claim of bad faith. Those cases either involved claims of bad faith filed by the obligee, see Dodge v. Fidelity & Deposit Co. of Maryland, 778 P.2d 1240 (Ariz. 1989), or involved a principal raising a lack of good faith as a defense to a surety's claim for indemnity, see City of Portland v. George D. Ward & Assoc., Inc., 750 P.2d 171 (Or. Ct. App. 1988); PSE Consulting, Inc. v. Frank Mercede & Sons, Inc., 838 A.2d 135 (Conn. 2004); The Mountbatten Surety Co., Inc. v. Jenkins, 2004 U.S. Dist. LEXIS 20653 (E.D. Pa. Oct. 13, 2004); The Hartford v. Tanner, 910 P.2d 872 (Kan. Ct. App. 1996); Republic Ins. Co. v. Prince George's County, 608 A.2d 1301 (Md. App. 1992); American Motorist Ins. Co. v. Southcrest Constr., Inc., No. 3:04-cv-2575-M, 2006 U.S. Dist. LEXIS 19933 (N.D. Tex. 2006). Another cited case is distinguishable because it involved a claim that the surety had interfered with the principal's prospective economic relationships. See Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co., 54 Cal. Rptr. 2d 888 (Cal. Ct. App. 1996).

In the instant case, this very issue has been extensively briefed and is now ripe for decision.  On December 12, 2007, IFIC filed a Notice of Supplemental Authority, bringing the Court's attention to a recent decision of the Court of Claims of Ohio in Gordon Proctor, Director of the Ohio Department of Transportation v. Nasco Construction, Inc., Case No. 2006-08038-PR. This is another suit brought by ODOT against a bridge painting contractor and its surety, IFIC, on a maintenance bond and a performance bond.  Nasco filed a crossclaim against IFIC alleging, much as Defendants do here, that "IFIC's conduct in conditioning its acceptance of Nasco's tendered defense upon Nasco's collateralization of the potential liability to ODOT, constitutes bad faith such that Nasco may recover damages from IFIC in tort."  See 11/30/07 Entry; Ex. to Notice of Supp. Authority.

On IFIC's motion to dismiss that crossclaim, the Court of Claims held:

> Nasco's cross-claims assert nothing more than a defense to IFIC's future claim for reimbursement of attorney fees and costs it will expend in defense of the bond claim.  The allegations are insufficient, as a matter of law, to state a claim for relief in tort against IFIC.  Suver v. Personal Service Insurance Co. (1984), 11 Ohio St. 3d 6, the primary case cited by Nasco as legal support for its cross-claims, is distinguishable from this case in that Suver involves a contract of insurance and not a surety agreement.  In short, the court is unable to find any case law that would support a claim for relief in tort under the facts alleged in the cross-claim.

Id.

On December 20, 2007, Defendants filed a motion to strike Plaintiff's Notice of Supplemental Authority.  Defendants argue that the interlocutory opinion in Nasco is non-binding and, because it is based on a misreading of Suver, requires further judicial review.  They also argue that the bad faith claims they asserted against IFIC in this case are more egregious and are, therefore, distinguishable from the claims asserted against IFIC in Nasco. In the Court's

13

view, Defendant's arguments clearly go to the weight to be given the <u>Nasco</u> decision, not its admissibility. The Court therefore denies Defendant's motion to strike.

IFIC maintains that the <u>Nasco</u> court correctly distinguished the <u>Suver</u> decision and, although the <u>Nasco</u> decision is not binding on this Court, it nevertheless involved strikingly similar issues and is persuasive authority. The Court agrees. The <u>Nasco</u> decision appears to be the only decision by an Ohio court addressing the issue of whether a principal can sue its surety in tort based on a claim of bad faith. Moreover, as discussed earlier, it is entirely consistent with the opinions of other courts which have concluded that such an action is not cognizable.

Regardless of any factual differences between the claims asserted by Defendants in this case and the claims asserted by Nasco, the bottom line is that Ohio does not recognize tort claims of bad faith asserted by a principal against a surety. Because Defendants have failed to state a claim upon which relief may be granted, the Court grants IFIC's motion to dismiss the counterclaim.

**IV.    Conclusion**

For the reasons set forth above, Plaintiff's motion to dismiss Defendants' counterclaim (Record at 9) is **GRANTED**. Defendants' motion to strike Plaintiff's Notice of Supplemental Authority (Record at 36) is **DENIED**.

**IT IS SO ORDERED.**


Date: April 3, 2008                                             **/s/ John D. Holschuh**
                                                                John D. Holschuh, Judge
                                                                United States District Court

14