IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL FIDELITY INSURANCE CO., | : | |
| | : | Case No. 2:07-cv-298 |
| Plaintiff, | : | Judge Holschuh |
| v. | : | Magistrate Judge Abel |
| VIMAS PAINTING CO., INC., et al., | : | |
| Defendants. | : | |
| | : | |

## MEMORANDUM OPINION & ORDER

Plaintiff International Fidelity Insurance Company ("IFIC"), a commercial surety, filed suit against Vimas Painting Company, Inc. ("Vimas"), Bessie and Panormitas Xipolitas, and Nicholas and Mary Frangopoulos, parties to an Indemnity Agreement. IFIC seeks monetary damages and specific performance of that agreement. This matter is currently before the Court on Defendants' motion for summary judgment. For the reasons set forth below, the Court denies that motion.

**I.    Background and Procedural History**

The relevant facts in this case are largely undisputed. In 2000, Vimas submitted a bid to the Ohio Department of Transportation ("ODOT") for surface preparation and painting of two highway bridges on Interstate 70 in Franklin County, Ohio. ODOT awarded Vimas the $1,825,983 contract. (Nicholas Frangopoulos Aff. ¶ 4). ODOT required Vimas to obtain performance and payment bonds in the amount of $2.575 million each.[1] (Id. at ¶ 7). ODOT also

---

[1] A contract performance bond guarantees that the contractor "will perform the work upon the terms proposed, within the time prescribed, and in accordance with the plans and specifications." Ohio Revised Code § 5525.16(A)(1). A payment bond guarantees payment to

required Vimas to obtain a $1.6 million 5-year warranty maintenance bond to guarantee against defects in materials or workmanship.[2] (Id. at ¶ 10). IFIC, as the surety, issued all three bonds, with Vimas as the principal and ODOT as the obligee.

In consideration for the bonds, Vimas, along with Bessie and Panormitas Xipolitas and Nicholas and Mary Frangopoulos (collectively "Defendants"), entered into an Indemnity Agreement with IFIC on January 21, 2001. Defendants agreed to:

> exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. *Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Such payment shall be equal to the amount of the reserve set by the Surety.* In the event of any payment by the Surety the Contractor and Indemnitors further agree that in any accounting between the Surety and the Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the

---

subcontractors for work performed and materials furnished in connection with the job. Ohio Revised Code § 5525.16(A)(2).

[2] Defendants note that even though the bid specifications called for a maintenance bond equal only to the bid price for surface preparation -- approximately $850,000 -- ODOT demanded, and IFIC executed, a maintenance bond for $1.6 million, nearly twice that amount.

> vouchers or other evidence of any such payments made by the
> Surety shall be prima facie evidence of the fact and amount of
> liability to the Surety.

(Indem. Agr. ¶ 2; Ex. B to Compl.) (emphasis added).

After IFIC issued the bonds, Vimas successfully completed the bridge painting project, and ODOT paid Vimas in full. Subsequently, during a warranty inspection, ODOT discovered numerous alleged defects in the paint jobs and demanded that Vimas and IFIC honor their obligations under the maintenance bond. They refused to do so. Thereafter, on May 18, 2006, ODOT filed suit in the Court of Claims of Ohio against Vimas and IFIC seeking recovery under the maintenance bond. <u>Gordon Proctor, Director of the Ohio Dep't of Transp. v. Vimas Painting Co., Inc. and International Fidelity Ins. Co.</u>, Case No. 06-CVH-5-6607 ("the underlying suit").[3]

Pursuant to the terms of the Indemnity Agreement, IFIC established a $500,000 reserve and, on August 2, 2006, demanded that Vimas provide an equal sum as collateral.[4] Vimas refused to do so. Vimas filed a counterclaim against ODOT in the underlying suit, taking the position that ODOT had no statutory authority to require maintenance bonds of its contractors, and that the maintenance bond was therefore void and invalid. ODOT subsequently amended the complaints in all of the bridge painting cases seeking, in the alternative, recovery under the

---

[3] According to Vimas, ODOT has filed similar suits against approximately 40 painting contractors. The suits allegedly stem from a 2003 incident in which two bridge painting contractors were indicted for bribing ODOT inspectors to approve substandard work. The ODOT inspectors were also indicted. Following that incident, ODOT allegedly retrained its inspectors, significantly raised its standards, re-inspected all projects that had been completed between 1997 and 2003, and is now seeking to recover damages from the contractors for defective workmanship.

[4] IFIC notes that its potential liability on the maintenance bond is $850,000, yet it has demanded only $500,000 in collateral.

performance bonds. Vimas, however, contends that since ODOT already issued its final acceptance of the project, recovery is no longer available under the performance bond. Vimas offered to defend IFIC in the underlying suit. However, since Vimas had refused to pay the collateral security demanded by IFIC, IFIC declined Vimas's offer and filed its own answer to ODOT's complaint, using separate counsel. (N. Frangopoulos Aff. at ¶¶ 17-18).

In April of 2007, IFIC filed this suit against Vimas, and against Bessie and Panormitas Xipolitas and Nicholas and Mary Frangopoulos, alleging claims of breach of contract, and seeking specific performance of those portions of the Indemnity Agreement which require Defendants to post the requested collateral and allow IFIC access to Vimas's books and records. IFIC also states a claim for common law indemnification.

Defendants then filed a four-count counterclaim against IFIC, alleging a breach of a duty of good faith. IFIC moved to dismiss the counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. On April 4, 2008, the Court granted IFIC's motion to dismiss the counterclaim, holding that a tort claim of bad faith filed by a principal against its surety was not cognizable under Ohio law.

On November 25, 2008, Defendants filed a motion for summary judgment, arguing that because ODOT has no cognizable claims on the maintenance or performance bonds in the underlying suit, there is no basis for IFIC's claims against Defendants. That motion is now fully briefed and ripe for decision.

## II.  Federal Rule of Civil Procedure 56(c)

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of

4

every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)). See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978). The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003). All the evidence and facts, as well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587-88 (1986); Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis in original). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). See also Anderson, 477 U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The nonmoving party must demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific

6

> facts showing a genuine issue for trial. If the opposing party does
> not so respond, summary judgment should, if appropriate, be
> entered against that party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. Anderson, 477 U.S. at 251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

### III. Analysis

At issue in this case is whether Defendants' contractual duty to post $500,000 in collateral security, as demanded by IFIC pursuant to the terms of the Indemnity Agreement, is somehow negated by the alleged non-viability of ODOT's claims in the underlying suit and/or by IFIC's alleged bad faith conduct in connection with that suit.

In their motion for summary judgment, Defendants argue that ODOT will not be able to recover under the maintenance bond because ODOT exceeded its statutory authority in requiring one. Moreover, according to Defendants, because the maintenance bond covers defects which develop after final acceptance of the project and the alleged deficiencies in the paint jobs occurred prior to that, recovery under the maintenance bond is barred. With respect to the performance bond, Defendants argue that recovery is barred because ODOT has already issued

7

its final acceptance on the project. Defendants then argue that because ODOT has no cognizable claims on the bonds in the underlying suit, IFIC has no basis for its Complaint and no right to demand the relief it seeks in this action.

In response, IFIC argues that the clear and unambiguous language of the Indemnity Agreement requires Defendants to make payment "equal to the amount of the reserve set by the Surety" and to do so "as soon as liability . . . is asserted against the Surety." (Indem. Agr. ¶ 2). IFIC therefore argues that regardless of whether ODOT's claims in the underlying suit are viable, Defendants are required to pay $500,000 in collateral security pursuant to the express terms of the Indemnity Agreement. The Court agrees.

As the Supreme Court of Ohio held in Worth v. Aetna Casualty & Surety Company, 32 Ohio St.3d 238, 240, 513 N.E.2d 253, 256 (Ohio 1987), "[i]ndemnity arises from contract, either express or implied." As such, the intent of the parties must be determined by examining the language used in the Indemnity Agreement. "All words used must be taken in their ordinary and popular sense," and when a contract "is worded in clear and precise terms" and "when its meaning is evident, and tends to no absurd conclusion," the court must give effect to its plain meaning. Id. at 240-41, 513 N.E.2d at 256 (citations and internal quotations omitted).

As noted earlier, the Indemnity Agreement in this case provides that Defendants will indemnify IFIC:

> from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds . . . Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors *as soon as liability exists or is asserted against the Surety, whether or not the*

8

> *Surety shall have made any payment therefor.* Such payment shall
> be equal to the amount of the reserve set by the Surety.

(Indemn. Agr. ¶ 2) (emphasis added).

The clear purpose of this provision is to establish a reserve sufficient to cover IFIC's potential future liability and all related expenses. IFIC has the right to demand the collateral security as soon as liability is asserted against it, regardless of whether IFIC has made any payments. It is undisputed that IFIC has been named as a defendant in the underlying action based on its status as the surety that issued the maintenance and performance bonds at issue. It is also undisputed that IFIC has placed $500,000 in reserve and demanded an equal amount from Defendants. The plain and unambiguous language of the Agreement requires Defendants to immediately post collateral equal to the sum reserved by IFIC. There is absolutely nothing in the language of the Indemnity Agreement to indicate that the parties intended to condition Defendants' payment of the collateral security on a preliminary assessment of the potential merits of the claims asserted against the Surety in the underlying suit.

Likewise, there is nothing in the language of the Indemnity Agreement to indicate that the parties intended to condition Defendants' payment of the $500,000 on a finding that IFIC acted in good faith in demanding the collateral security. Defendants contend that IFIC has acted in bad faith by refusing their offer to defend IFIC in the underlying suit and conditioning a joint defense on Defendants' payment of the collateral security.[5] Defendants, however, concede that nothing in the Indemnity Agreement requires IFIC to allow Defendants to provide a defense.

---

[5] Defendants further note that IFIC has recently joined in their motion for summary judgment in the underlying suit, arguing that ODOT's claims on the performance and maintenance bonds are not cognizable.

The Indemnity Agreement does speak of good faith. It provides that "in the event of any payment by the Surety . . . the Surety shall be entitled to charge for any and all disbursements made by it in good faith." (Indemn. Agr. ¶ 2). As Defendants point out in their reply brief, this Court noted in its April 3, 2008 Memorandum Opinion & Order that, even though a principal cannot bring a tort claim of bad faith against a surety, a principal may assert a surety's bad faith as a defense to a claim for indemnification. In other words, once IFIC has made a disbursement, its right to indemnification is conditioned on a finding that it made the disbursement in good faith.

However, the "good faith" provision in the Indemnity Agreement is completely unrelated to Defendants' contractual duty to make the collateral security payment. The case of <u>Fidelity and Deposit Company of Maryland v. D.M. Ward Construction Company</u>, No. 06-2483-CM, 2008 WL 2761314 (D. Kan. July 14, 2008), is particularly instructive because it interprets an indemnity agreement with language identical to that at issue here. The court held that the "plain language of the agreement requires defendants to post collateral in the amount of the reserve without regard to other factors" such as whether the surety acted in good faith. In so holding, the court noted that the "good faith" element appears only in connection with the indemnification provision, not in the language "relating to the preliminary posting of collateral." <u>See also</u>, <u>Far West Ins. Co. v. J. Metro Excavating, Inc.</u>, No. 2:07-cv-11-PRC, 2008 WL 859182, at *12 (N.D. Ind. Mar. 28, 2008) (holding that the question of whether bond issuer paid a claim in good faith "does not affect Defendants' obligation under the Indemnity Agreement to post collateral").

The plain and unambiguous language of the Indemnity Agreement requires Defendants to post the collateral security demanded by IFIC regardless of any alleged lack of good faith on the part of IFIC. In summary, because Defendants have failed to provide any legal basis for their motion for summary judgment, the Court denies that motion.

## IV. Conclusion

Because the Indemnity Agreement at issue clearly and unambiguously requires Defendants to post collateral upon IFIC's demand regardless of whether ODOT's claims in the underlying action are cognizable and regardless of whether IFIC acted in good faith in refusing to allow Defendants to defend IFIC in the underlying action, the Court **DENIES** Defendants' motion for summary judgment. (Doc. 71).

**IT IS SO ORDERED.**


Date: February 26, 2009                         **/s/ John D. Holschuh**
                                                John D. Holschuh, Judge
                                                United States District Court