# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

INTERNATIONAL FIDELITY      :
INSURANCE COMPANY,

                                :     Case No. 2:07-cv-298

        **Plaintiff,**

                                :     Judge Holschuh

    v.

                                :     Magistrate Judge Abel

VIMAS PAINTING CO., INC., et al.,

                                :

        **Defendants.**

                                :

## MEMORANDUM OPINION & ORDER

Plaintiff International Fidelity Insurance Company ("IFIC"), a commercial surety, filed suit against Vimas Painting Company, Inc. ("Vimas"), Bessie and Panormitis Xipolitas, and Nicholas and Mary Frangopoulos, parties to an Indemnity Agreement.  IFIC seeks monetary damages and specific performance of that agreement.  This matter is currently before the Court on Plaintiff's motion for partial summary judgment. (Doc. 88). Plaintiff seeks summary judgment with respect to Counts I, III and IV of its Complaint.  For the reasons set forth below, Plaintiff's motion is **GRANTED IN PART.**

## I.      Background and Procedural History

The relevant facts concerning this case were set forth as follows in this Court's February 26, 2009 Memorandum Opinion and Order. In 2000, Vimas submitted a bid to the Ohio Department of Transportation ("ODOT") for surface preparation and painting of two highway bridges on Interstate 70 in Franklin County, Ohio.  ODOT awarded Vimas the $1,825,983 contract.  (Nicholas Frangopoulos Aff. ¶ 4).  ODOT required Vimas to obtain performance and

payment bonds in the amount of $2.575 million each.[1]  (Id. at ¶ 7).  ODOT also required Vimas

to obtain a $1.6 million 5-year warranty maintenance bond to guarantee against defects in

materials or workmanship.[2]  (Id. at ¶ 10).  IFIC, as the surety, issued all three bonds, with Vimas

as the principal and ODOT as the obligee.

In consideration for the bonds, Vimas, along with Bessie and Panormitis Xipolitas and

Nicholas and Mary Frangopoulos (collectively "Defendants"), entered into an Indemnity

Agreement with IFIC on January 21, 2001.  Defendants agreed to:

> exonerate, indemnify, and keep indemnified the Surety from and
> against any and all liability for losses and/or expenses of
> whatsoever kind or nature (including, but not limited to, interest,
> court costs and counsel fees) and from and against any and all such
> losses and/or expenses which the Surety may sustain and incur: (1)
> By reason of having executed or procured the execution of the
> Bonds, (2) By reason of the failure of the Contractor or
> Indemnitors to perform or comply with the covenants and
> conditions of this Agreement or (3) In enforcing any of the
> covenants and conditions of this Agreement.  *Payment by reason*
> *of the aforesaid causes shall be made to the Surety by the*
> *Contractor and Indemnitors as soon as liability exists or is*
> *asserted against the Surety, whether or not the Surety shall have*
> *made any payment therefor.  Such payment shall be equal to the*
> *amount of the reserve set by the Surety.*  In the event of any
> payment by the Surety the Contractor and Indemnitors further
> agree that in any accounting between the Surety and the
> Contractor, or between the Surety and the Indemnitors, or either or
> both of them, the Surety shall be entitled to charge for any and all

---

[1]  A contract performance bond guarantees that the contractor "will perform the work
upon the terms proposed, within the time prescribed, and in accordance with the plans and
specifications."  Ohio Revised Code § 5525.16(A)(1).  A payment bond guarantees payment to
subcontractors for work performed and materials furnished in connection with the job.  Ohio
Revised Code § 5525.16(A)(2).

[2]  Defendants note that even though the bid specifications called for a maintenance bond
equal only to the bid price for surface preparation -- approximately $850,000 -- ODOT
demanded, and IFIC executed, a maintenance bond for $1.6 million, nearly twice that amount.

disbursements made by it in good faith in and about the matters herein contemplated by this agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of liability to the Surety.

(Indem. Agr. ¶ 2; Ex. B to Compl.) (emphasis added).

After IFIC issued the bonds, Vimas successfully completed the bridge painting project, and ODOT paid Vimas in full. Subsequently, during a warranty inspection, ODOT discovered numerous alleged defects in the paint jobs and demanded that Vimas and IFIC honor their obligations under the maintenance bond. They refused to do so. Thereafter, on May 18, 2006, ODOT filed suit in the Court of Claims of Ohio against Vimas and IFIC seeking recovery under the maintenance bond. <u>Gordon Proctor, Director of the Ohio Dep't of Transp. v. Vimas Painting Co., Inc. and International Fidelity Ins. Co.</u>, Case No. 06-CVH-5-6607 ("the underlying suit").[3]

Pursuant to the terms of the Indemnity Agreement, IFIC established a $500,000 reserve and, on August 2, 2006, demanded that Vimas provide an equal sum as collateral. Vimas refused to do so. Vimas filed a counterclaim against ODOT in the underlying suit, taking the position that ODOT had no statutory authority to require maintenance bonds of its contractors, and that the maintenance bond was therefore void and invalid. ODOT subsequently amended the

---

[3] According to Vimas, ODOT has filed similar suits against approximately 40 painting contractors. The suits allegedly stem from a 2003 incident in which two bridge painting contractors were indicted for bribing ODOT inspectors to approve substandard work. The ODOT inspectors were also indicted. Following that incident, ODOT allegedly retrained its inspectors, significantly raised its standards, re-inspected all projects that had been completed between 1997 and 2003, and is now seeking to recover damages from the contractors for defective workmanship.

complaints in all of the bridge painting cases seeking, in the alternative, recovery under the performance bonds.  Vimas, however, contends that since ODOT already issued its final acceptance of the project, recovery is no longer available under the performance bond.  Vimas offered to defend IFIC in the underlying suit.  However, since Vimas had refused to post the collateral security demanded by IFIC, IFIC declined Vimas's offer and filed its own answer to ODOT's complaint, using separate counsel.  (N. Frangopoulos Aff. at ¶¶ 17-18).

In April of 2007, IFIC filed this suit against Vimas, and against Bessie and Panormitis Xipolitas and Nicholas and Mary Frangopoulos, alleging claims of breach of contract, and seeking specific performance of those portions of the Indemnity Agreement which require Defendants to post the requested collateral and allow IFIC access to Defendants' books and records.  IFIC also states a claim for common law indemnification.

Defendants filed a four-count counterclaim against IFIC, alleging a breach of a duty of good faith.  IFIC moved to dismiss the counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.   On April 4, 2008, the Court granted IFIC's motion to dismiss the counterclaim, holding that a tort claim of bad faith filed by a principal against its surety was not cognizable under Ohio law.

On November 25, 2008, Defendants filed a motion for summary judgment, essentially arguing that because ODOT's claims in the underlying suit are not cognizable, neither are IFIC's claims against Defendants.  On February 26, 2009, the Court denied Defendants' motion for summary judgment, holding that the Indemnity Agreement clearly and unambiguously requires Defendants to post collateral regardless of whether ODOT's claims in the underlying suit are viable and regardless of whether IFIC acted in good faith in refusing to allow Defendants to

defend IFIC in the underlying action.

On February 12, 2009, Plaintiff filed a motion for partial summary judgment on Counts I, III, and IV of the Complaint. Count I is a breach of contract claim. It alleges that Defendants have breached the Indemnity Agreement by refusing to post collateral in the amount of $500,000 and by refusing to indemnify IFIC in the underlying suit. Count III seeks specific performance of that portion of the Indemnity Agreement that requires Defendants to post collateral in an amount equal to that set aside by IFIC, *i.e.*, $500,000. Count IV seeks specific performance of that portion of the Indemnity Agreement that requires Defendants to allow IFIC reasonable access to Defendants' books and records. IFIC has not moved for summary judgment on Count II, the claim for common law indemnification.

## II.     Standard of Review

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467

(1962) (quoting <u>Sartor v. Arkansas Natural Gas Corp.</u>, 321 U.S. 620, 627 (1944)).  <u>See also</u>

<u>Lansing Dairy, Inc. v. Espy</u>, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine

if there are genuine issues of fact to be tried.  <u>Lashlee v. Sumner</u>,  570 F.2d 107, 111 (6th Cir.

1978).  The court's duty is to determine only whether sufficient evidence has been presented to

make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the

credibility of witnesses, or determine the truth of the matter.  <u>Anderson v. Liberty Lobby, Inc.</u>,

477 U.S. 242, 249 (1986); <u>Weaver v. Shadoan</u>, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing

that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter

of law.  <u>Leary v. Daeschner</u>, 349 F.3d 888, 897 (6th Cir. 2003).  All the evidence and facts, as

well as inferences to be drawn from the underlying facts, must be considered in the light most

favorable to the party opposing the motion.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>,

475 U.S. 574, 587-88 (1986);  <u>Wade v. Knoxville Util. Bd.</u>, 259 F.3d 452, 460 (6th Cir. 2001).

Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to

material issues of fact, justify denial of a motion for summary judgment.  <u>Adickes v. S.H. Kress</u>

<u>& Co.</u>, 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment; the requirement is that there be

no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson</u>, 477 U.S. at 247-48 (emphasis in original).  A

"material" fact is one that "would have [the] effect of establishing or refuting one of [the]

essential elements of a cause of action or defense asserted by the parties, and would necessarily

affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). See also Anderson, 477 U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The nonmoving party must demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a

verdict in favor of the nonmoving party based on the presented evidence. <u>Anderson</u>, 477 U.S. at 251-52; <u>Lansing Dairy, Inc.</u>, 39 F.3d at 1347.

## III.    Analysis

### A.    Request for Oral Argument

Plaintiff has requested oral argument in connection with its motion for partial summary judgment. Local rules provide that "if oral argument is deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented, counsel may apply to the Court for argument." S.D. Ohio Civ. R. 7.1(b)(2). The Court concludes that oral argument is not essential to the fair resolution of this case and therefore denies IFIC's request.

### B.    Merits of Motion

As noted earlier, in denying Defendants' earlier motion for summary judgment, the Court held that pursuant to the clear and unambiguous terms of the Indemnity Agreement, as soon as liability was asserted against IFIC and IFIC established a reserve fund of $500,000, Defendants were required to post an equal amount in collateral security. The Court also held that this payment was required regardless of the potential merits of ODOT's claims in the underlying suit and regardless of whether IFIC acted in bad faith in conditioning a joint defense in that suit on Defendants' payment of the collateral security. (Feb. 26, 2009 Mem. Op. & Order at 9).

Plaintiff has now moved for summary judgment on Counts I, III, and IV of the Complaint. Count I alleges that Defendants breached the Indemnity Agreement by refusing to post collateral in an amount equal to the reserve set aside by IFIC, *i.e.*, $500,000. Count III requests specific performance of that same provision of the Indemnity Agreement. Count IV

requests specific performance of that portion of the Indemnity Agreement that requires Defendants to allow IFIC reasonable access to their books, records, and accounts. IFIC contends that there is no genuine issue of material fact with respect to these claims and that it is contractually entitled to the relief requested.

Defendants acknowledge that they have refused to post the collateral demanded by IFIC. They argue, however, that their performance should be excused because IFIC breached an implied duty of good faith and fair dealing by not revising its request for $500,000 after investigating the merits of ODOT's claims in the underlying suit and determining them to be without merit. For the reasons set forth below, the Court rejects this argument.

### 1. Counts I and III: Breach of Contract and Specific Performance

In Count I of the Complaint, IFIC alleges that Defendants have breached the Indemnity Agreement by refusing to hold IFIC harmless from the claims asserted against the maintenance and performance bonds and by refusing to post the requested collateral security in the amount of $500,000. With respect to Count I, IFIC asks the Court to enter judgment against Defendants, jointly and severally, in the initial amount of $500,000 plus costs and expenses. IFIC also asks the Court to require Defendants to post collateral in the initial amount of $500,000 or in an amount sufficient to secure IFIC from any losses, and asks for any other legal and equitable relief deemed proper by the Court. Count III is based on the same facts that give rise to the breach of contract claim, but demands specific performance of that portion of the Indemnity Agreement that requires Defendants to post collateral in an amount equal to the reserve set aside by IFIC.

**A.     Liability**

Because this Court's jurisdiction is based on diversity of citizenship, the Court must apply the substantive law of the forum state.  Erie v. Tompkins, 304 U.S. 64 (1938).  To establish a breach of contract claim under Ohio law, a plaintiff must prove, by a preponderance of the evidence, the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff. Savedoff v. Access Group, 524 F.3d 754, 762 (6th Cir. 2008) (quoting Jarupan v. Hanna, 173 Ohio App. 3d 284, 294, 878 N.E.2d 66, 73 (Ohio Ct. App. 2007)).

In this case, it appears to be undisputed that: (1) the parties entered into a contract in the form of the Indemnity Agreement; (2) IFIC performed by issuing the bonds and, once liability was asserted against it, establishing a reserve account; (3) Defendants have refused to post the $500,000 IFIC has requested in collateral security; and (4) IFIC has been damaged because it has incurred expenses in the underlying suit without the benefit of the bargained-for collateral security.

The only question with respect to liability is whether Defendants are somehow excused from performance based on IFIC's failure to modify its request for $500,000 after it evaluated ODOT's claims in the underlying suit and allegedly found them to be substantially without merit.  The Ohio Supreme Court has held that "breach," as it relates to contracts, is defined as "a failure *without legal excuse* to perform any promise which forms a whole or part of a contract." National City Bank of Cleveland v. Erskine & Sons, Inc., 158 Ohio St. 450, 461, 110 N.E.2d 598, 603 (Ohio 1953) (emphasis added).  Defendants note that an implied duty of good faith and fair dealing is inherent in every contract.  See Miller v. Gunckle, No. CA2000-02-026, 2000 WL

1818543, at *8 (Ohio Ct. App. Dec. 11, 2000), rev'd on other grounds, 96 Ohio St. 3d 359, 775

N.E.2d 475, 2002-Ohio-4932 (2002). They argue that IFIC has breached this implied duty of

good faith and fair dealing by refusing to modify its request for $500,000 after investigating the

merits of ODOT's claims. Defendants imply that because IFIC has breached this duty,

Defendants are excused from performance.

IFIC acknowledges that an implied duty of good faith and fair dealing exists in every

contract, but argues that this implied duty comes into play only when necessary to fill a gap not

explicitly resolved by the written agreement of the parties. See Fultz & Thatcher v. Burrows

Group Corp., No. CA2005-11-126, 2006 WL 3833971, at *6 (Ohio Ct. App. Dec. 28, 2006).

IFIC notes that, in this case, the Indemnity Agreement expressly provides that "as soon as

liability exists or is asserted against the Surety," payment shall be made "equal to the amount of

the reserve set by the Surety."

Nothing in the Indemnity Agreement requires IFIC to modify its demand for collateral

security in response to subsequent developments in the litigation. The Indemnity Agreement is

completely silent on this point. In that respect, there is, in fact, a gap to be filled by an implied

duty of good faith and fair dealing. Defendants contend that after IFIC investigated the merits of

ODOT's claims and determined that ODOT would be unlikely to recover on the performance or

maintenance bond, IFIC had an implied duty to reevaluate its request for collateral and to adjust

it accordingly.

The problem with Defendants' argument is that under Ohio law, "[t]he duty of good faith

and fair dealing may not be invoked to override express contract terms." DavCo Acquisition

Holding, Inc. v. Wendy's Intern., Inc., No. 2:07-cv-1064, 2008 WL 755283, at *6 (S.D.Ohio

Mar. 19, 2008). See also Webb v. Chase Manhattan Mortg. Corp., No. 2:05-cv-548, 2008 WL 2230696, at * 23 (S.D. Ohio May 28, 2008) (holding that the covenant of good faith and fair dealing cannot be implied to contradict express contract provisions).

Reading an implied duty of good faith into the Indemnity Agreement and requiring IFIC to modify its demand for collateral would be contrary to the clearly expressed intent of the parties. The Indemnity Agreement expressly contemplates that IFIC will establish a reserve fund "as soon as liability is asserted," and that Defendants will immediately make a payment equal to the amount set aside by IFIC. Had Defendants fulfilled their promise, they would not be in a position to argue that subsequent developments in the litigation justify modifying the demand for collateral. Clearly the parties did not contemplate that Defendants could refuse to post the collateral initially requested in hope that IFIC would reduce its demand after it more fully evaluated the merits of ODOT's claims. Under these circumstances, Defendants cannot properly invoke an implied duty of good faith because imposing such a duty on IFIC would be contrary to the express terms of the contract. Tellingly, Defendants cite to no case in which a court has held that a surety has a duty to modify its request for collateral security once it fully evaluates the merits of the claims.

Even if the Court were to find that an implied duty of good faith and fair dealing exists, no reasonable jury could find that IFIC breached that duty by refusing to modify its demand for collateral. The purpose of the collateral reserve is to ensure that IFIC has adequate funds available to cover its litigation expenses and to make a payout if liability is ultimately found to exist. The Indemnity Agreement expressly contemplates that the reserve will be established "as soon as liability . . . is asserted against the Surety." At this stage of the litigation, it is difficult to

fully evaluate the merits of the claims asserted, particularly if little or no discovery has taken place.  Rather, the surety must determine how much money should be placed in reserve based on its preliminary assessment of its *potential* liability.

In this case, ODOT initially sought recovery only under the maintenance bond, which was issued in the amount of $1.6 million.  Based on its preliminary assessment of its potential exposure, IFIC chose to place $500,000 in reserve and demanded an equal amount from Defendants as collateral, as expressly permitted by the terms of the Indemnity Agreement.  ODOT subsequently amended its complaint to include a claim for recovery under the performance bond, which was issued in the amount of $2.575 million.  Notably, IFIC did not increase its demand for collateral to account for this significant increase in its potential liability.

After further investigation, IFIC moved for summary judgment in the underlying suit.  According to Defendants, IFIC now agrees with them that it is unlikely that ODOT will be able to recover under either the maintenance or performance bond.  Regardless of IFIC's assessment of the merits of ODOT's claims, the outcome of that litigation has yet to be determined and the motions for summary judgment apparently remain pending in the Court of Claims.  No one can be certain how the court may rule on those motions or what a jury may ultimately decide.  Therefore, even though IFIC may, in fact, now agree with Defendants that ODOT's claims in the underlying suit lack merit, IFIC cannot be said to be acting in bad faith by continuing to require Defendants to post $500,000 in collateral, particularly when the potential liability is still over $4 million.  Pursuant to the clear and unambiguous terms of the Indemnity Agreement, IFIC is entitled to protect itself just in case its assessment of the merits of those claims turns out to be incorrect.

To summarize, Defendants have no legal excuse for breaching the provision in the Indemnity Agreement that requires them to post $500,000 in collateral as requested by IFIC. There is no implied duty of good faith that required IFIC to modify its demand after investigating the merits of ODOT's claims, and even if such a duty existed, no reasonable jury could find that IFIC breached that duty. Because there are no genuine issues of material fact with respect to Defendants' liability for breach of contract claim, IFIC is entitled to summary judgment on this claim.

### B.    Appropriate Remedy

Having determined that Defendants have breached the Indemnity Agreement by failing to post the $500,000 in collateral demanded by IFIC, the Court turns to the question of an appropriate remedy. Normally, a party injured by a breach of contract is entitled to be placed "in as good a position as he would have been in had the contract been performed." Brads v. First Baptist Church of Germantown, Ohio, 89 Ohio App. 3d 328, 339, 624 N.E.2d 737, 745 (Ohio Ct. App. 1993). However, damages for a loss of expectation interest are limited to the actual loss suffered as a result of the breach, and "he is not entitled to be placed in a *better* position than he would have been in had the breach not occurred." Id.

In its Complaint, IFIC seeks a "judgment" against Defendants, jointly and severally in the initial amount of $500,000 plus costs and expenses. On the one hand, awarding IFIC $500,000 would place IFIC in as good a position as it would have been in had the contract been performed. On the other hand, entering a "judgment" in the amount of $500,000 may well place IFIC in a better position than it would have been in had the breach not occurred.

Even though Defendants were contractually obligated to post $500,000 in collateral, that money is not necessarily IFIC's to keep.  Presumably, if the litigation costs related to the underlying suit total less than $500,000, any surplus would be refunded to Defendants.  It therefore appears somewhat inappropriate to enter a $500,000 "judgment" against Defendants.

As the Sixth Circuit explained in Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp., 399 F.3d 692, 704 (6th Cir. 2005), "[u]nder Ohio law, '[a] claimant seeking to recover for breach of contract must show damage as a result of the breach. Damages are not awarded for a mere breach of contract; the amount of damages awarded must correspond to injuries resulting from the breach.' Textron Fin. Corp. v. Nationwide Mut. Ins. Co., 115 Ohio App.3d 137, 684 N.E.2d 1261, 1266 (1996) (internal citations omitted)."

In this case, the true extent of IFIC's damages as a result of Defendants' breach cannot yet be determined.  The underlying suit remains pending in the Ohio Court of Claims.  If the Court of Claims grants the motions for summary judgment filed by IFIC and Defendants, IFIC's damages may be limited to attorney fees, costs and other expenses.  A "judgment" in the amount of $500,000 under those circumstances would clearly be excessive.

In the alternative, IFIC seeks specific performance of that portion of the Indemnity Agreement that requires Defendants to post collateral in an amount equal to the reserve set by IFIC.  Specific performance, however, is an equitable remedy and is "only available where there is no adequate remedy at law."  Gleason v. Gleason, 64 Ohio App.3d 667, 672, 582 N.E.2d 657, 661 (Ohio Ct. App. 1991).  In Count III of the Complaint, IFIC states that it "lacks an adequate remedy at law and will suffer irreparable harm" if the Court does not order specific performance. In its motion for partial summary judgment, however, IFIC fails to explain why damages, in an

amount yet to be determined, would be inadequate to compensate for the breach.

Before determining an appropriate remedy, the Court would like the benefit of supplemental briefing on this issue. Plaintiff shall have until August 14, 2009 to submit a brief on the question of whether an adequate remedy exists at law for the breach of contract. Defendants shall have until August 24, 2009 to file a response. Plaintiff's reply brief, if any, shall be filed no later than August 31, 2009.

### 2.     Count IV:  Specific Performance-Access to Books and Records

In Count IV of the Complaint, IFIC demands specific performance of that portion of the Indemnity Agreement that provides a right of access to Defendants' books, records, and accounts. Paragraph Ninth of the Indemnity Agreement states:

> NINTH:    At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Contractor and Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under the contracts being performed by the Contractor, the condition of the performance of such contracts and payments of accounts.

(Ex. B to Compl.).  According to IFIC, although Defendants have indicated on several occasions that they are willing to allow IFIC reasonable access to their books and records, they have not followed through.  After a date was set for the inspection, Defendants reneged on their offer and indicated that they would not oblige without a court order.

In their response to IFIC's motion for partial summary judgment, Defendants do not dispute the fact that the Indemnity Agreement expressly guarantees IFIC the right to reasonable access to Defendants' books, records, and accounts.  Nor do they present any evidence creating a genuine issue of material fact with respect to this issue.  Therefore, the Court grants IFIC's

motion for summary judgment on Count IV. Defendants are ordered to provide IFIC reasonable access to their books, records, and accounts within 15 days of this order, and shall continue to allow reasonable access until such time as liability against IFIC under the bonds is terminated.

## IV. Conclusion

For the reasons set forth above, the Court **GRANTS IN PART** Plaintiff's motion for partial summary judgment. (Doc. 88). The Court finds that Defendants have breached the Indemnity Agreement by refusing to post the $500,000 in requested collateral security. The Court therefore grants summary judgment in favor of IFIC on the issue of liability. The Court, however, reserves ruling on the issue of an appropriate remedy. Plaintiff shall have until August 14, 2009 to submit a brief on the question of whether an adequate remedy exists at law for the breach of contract or whether the Court may order specific performance instead. Defendants shall have until August 24, 2009 to file a response. Plaintiff's reply brief, if any, shall be filed no later than August 31, 2009.

The Court grants summary judgment in favor of IFIC with respect to Count IV of the Complaint. Within 15 days of the date of this Memorandum Opinion and Order, Defendants shall provide IFIC reasonable access to their books, records and accounts and shall continue to provide reasonable access until such time as liability against IFIC under the bonds is terminated.

**IT IS SO ORDERED.**

Date: July 23, 2009                    **/s/ John D. Holschuh**
                                       John D. Holschuh, Judge
                                       United States District Court